## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

In re:

CARL WAYNE ORRELL,                                     Chapter 7

     Debtor.                                          Case No.: 19-33630

_____/

KAPITUS SERVICING, INC, AS
SERVICING AGENT FOR KAPITUS LLC,

                                  Ad. Pro. No. _____

        Plaintiff,
   v.

CARL WAYNE ORRELL,

        Defendant.

_____/

### KAPITUS SERVICING, INC.'S
### COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Kapitus Servicing, Inc., as servicing agent for Kapitus LLC ("Kapitus" or the "Plaintiff"), by and through its undersigned attorneys files this complaint (the "Complaint") under section 523 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed by Defendant Carl Wayne Orrell ("Orrell" or the "Debtor") to Kapitus and in support of this Complaint Kapitus alleges as follows:

### JURISDICTION AND VENUE

1.     This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and is brought pursuant to section 523 of the Bankruptcy Code and rule 4007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 157 and 1334.

3.      Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. §1409(a) because this Complaint arises in Debtor's chapter 7 bankruptcy case.

4.      If the Court should find that this is not a core proceeding, Plaintiff consents to entry of final judgment by the Court.[1]

5.      This Adversary Proceeding relates to *In re Carl Wayne Orrell*, Case No. 19-33630 (Bankr. N.D. Tex.) (Chapter 7) (the "Bankruptcy Case"), now pending in this court (the "Court").

## THE PARTIES

6.      Plaintiff Kapitus, is a Virginia corporation, and at all relevant times maintained its offices formally located at 211 Bulifants Blvd., Suite E, Williamsburg, VA 23188 and currently located at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 and 120 West 45th Street, New York NY 10036.

7.      Upon information and belief, Orrell is a natural person and is a resident of the state of Texas residing at 501 Indian Creek Dr., Trophy Club, TX 76262.

8.      Upon information and belief, Debtor operated Blue Star Recycling, LLC and Blue Star Recycling Dallas, LLC (together, the "Merchant") with its principal place of business located at 9527 S. Central Expy, Dallas, TX 75241-7324.   Upon information and belief, at all times relevant hereto, the Debtor was Merchant's owner and representative, controlled Merchant, and made all decisions and statements to Plaintiff relevant to the issues herein.

---

[1]      Notwithstanding any of the allegations and claims herein, the institution of this adversary proceeding (this "Adversary Proceeding"), the filing of this Complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.  If and when Plaintiff shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

9.      Plaintiff is a secured creditor of Merchant and an unsecured creditor of Debtor with a claim against both in the amount of $96,626.16, as of October 31, 2019 (the "Petition Date"), along with additional costs, fees, expenses, and interest pursuant to the Future Receivable Factoring Agreement ("Agreement") executed by Debtor, as defined and more fully detailed below.

## GENERAL ALLEGATIONS

10.      Debtor filed for bankruptcy under chapter 7 of the Bankruptcy Code on the Petition Date.  [Doc. No. 1].

11.      Pursuant to Official Form 309A filed on November 1, 2019 [Doc. No. 6], the deadline to object to discharge is Monday, February 10, 2020.

12.      Accordingly, this Complaint is timely filed.

## SPECIFIC FACTUAL ALLEGATIONS

13.      On or about April 5, 2019, Debtor had a pre-funding call with Kapitus during which Debtor stated to Kapitus that (a) he did not anticipate the closing of the Merchant's business for any reason in the next twelve months, (b) he was not planning for and did not expect to file for bankruptcy in the foreseeable future, (c) he was not in arrears on any loans or with any financial institutions, (d) except for Kapitus, the Merchant had no balances with any other financing source that took payments on less than a monthly basis, and (e) the Debtor understood that false statements constitute fraud.

14.      The relevant portions of the pre-funding call are transcribed below:

Kapitus: Now Because we are providing you with financing we will be filing a UCC-1 Security Interest in your Receivables and on the assets of your Business.

Orrell: Yep.

Kapitus: Now we have a few acknowledgement questions.

Kapitus: Do you anticipate closing your business for any reason over the next twelve months?

Orrell: No.

Kapitus: Do you anticipate selling your business in the next twelve months?

Orrell: No.

Kapitus: Have you been planning to file or do you know of any reason to believe that your Business will need to file for bankruptcy protection in the foreseeable future?

Orrell: No.

Kapitus: Are you current on your payments to your landlord for your business property?

Orrell: Yeah.

Kapitus: Do you acknowledge and understand all the fees detailed in Schedule A of the Merchant agreement?

Orrell: Yea, there's a bunch of them.

Kapitus: Are you in arrears with any loans or with any financial institutions?

Orrell: Uh no.

Kapitus: Are you in arrears on any taxes due to any federal state or local authority?

Orrell: No.

Kapitus: Do you currently have a balance with any other financing source that takes payments on less than a monthly basis?

Orrell: You guys.

Kapitus: Oh okay.

Kapitus: Do you recognize that any false statements or misrepresentations may constitute fraud and subject you to legal action?

Orrell: Mmhmm.

Kapitus: Do you have any questions so far?

Orrell: No.

Kapitus: Okay.

15.     On or about March 6, 2018, Debtor executed an application for a merchant advance with Plaintiff (the "Application").  A true and correct copy of the Application is attached hereto as **Exhibit A**.  In the Application, Debtor represented Merchant's gross annual sales to be $749,974. *Id.*

16.      On or about April 4, 2019, Debtor, in his capacity as owner and representative of Merchant, and in his individual capacity as guarantor, executed the Agreement with Kapitus.  A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

17.     Pursuant to the Agreement, Plaintiff purchased $101,250 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant's business operations (the "Receivables").  Contemporaneously with the execution of the Agreement, and as further security, the Debtor executed a personal guaranty (the "Guaranty"), guaranteeing Merchant's full performance of all terms and obligations under the Agreement.  A true and correct copy of the Guaranty is attached as part of the Agreement.  Under the terms of the Agreement, Kapitus is designated as the authorized servicing agent to service and enforce the agreement; including enforcement through legal action.

18.     On or about April 10, 2019, Plaintiff paid Debtor $75,000 as the agreed purchase price for the Receivables.  To allow Plaintiff to collect its purchased Receivables, the Agreement required Merchant to use only a single, specified depositing account to deposit all Receivables collected by Merchant (the "Account"), which was designated by the parties in the Agreement and fully accessible to Plaintiff.  *See* Agreement, p. 1 & pp. 3–4 §§ 1.1, 2.7.  From this account, the Agreement entitled Plaintiff to collect 3.5% of the batch amount of Merchant's collected

receivables via Automated Clearing House ("ACH") in a daily amount of $412.00 through debits

from the Account. *See id.*, pp. 1, 4, §2.7. The authorization for Kapitus to use the Account to

make such transfers is irrevocable by Merchant without Kapitus's consent. *See id.*, pp. 3, §1.1

19.     To avoid disruption, the Agreement prohibited changes to the Account or the

designation of the deposit account except with Plaintiff's express written consent. *See id.* at p. 3

§1.1.

20.     In addition to the above terms, by entering the Agreement, Debtor represented,

warranted, and covenanted the following:

> **II.      REPRESENTATIONS, WARRANTIES AND COVENANTS.** Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> **2.1 Financial Condition and Financial Information.** . . . Merchant's bank statements and financial information, provided to [Kapitus] fairly represent the financial condition of Merchant of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. . . . No material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise [Kapitus] of any material change in its financial condition, operation or ownership. . . .
>
> **2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.
>
> **2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.
>
> **2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the

[Kapitus] or change any of its places of business without ten (10) days prior written notice to [Kapitus].

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis. . ..

**2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than [Kapitus] without [Kapitus]'s written permission.**

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Kapitus].

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

*Id.* at pp. 3–4.

21.     In executing the Agreement, Debtor agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR [DEBTOR] IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A**

**SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING.**" *See* Agreement at p. 2 (emphasis in original).

22.     In reliance on the representations made by Debtor in the Agreement and the Application, Plaintiff agreed to purchase certain of Merchant's Receivables, as outlined above.

23.     Prior to entering into the Agreement, Merchant and Debtor represented that Merchant was an active and ongoing business with significant, ongoing monthly receivables.

24.     Merchant and Debtor further represented that they each intended to perform the obligations they would assume under the Agreement and Guaranty. Specifically, Merchant represented that it intended to deposit its receipts into an agreed upon Account, and provided Kapitus an irrevocable authorization to draft the purchased receivables out of that account, and Debtor represented that he intended to ensure that Merchant performed its obligations under the Agreement and to guaranty the obligations in the event of default.

25.     Relying upon these representations, Kapitus entered into the Agreement and Guaranty with Merchant and Debtor.

26.     Relying upon these representations, Kapitus also agreed to accept the purchased Receivables over an extended period of time by drafting a small portion of Merchant's daily Receivables unless and until the Merchant defaulted under the Agreement.

27.     Kapitus reliance on these representations was reasonable and justifiable because, at that time, they had no knowledge, nor any reason to know, that the statements or information provided were false.

28.     Defendants defaulted on the Agreement approximately one month after entering into the Agreement and Guaranty. Specifically, after making daily payments from April 11, 2019

through May 16, 2019, on May 17, 2019, the daily payments were returned because of insufficient funds in the Account.

29.     After defaulting, Merchant and Debtor represented to Kapitus that Merchant did not have sufficient funds to make any payment whatsoever. This was approximately one month after Plaintiff advanced $75,000 to Merchant, an allegedly ongoing business with significant monthly receivables.

30.     Upon information and belief, at the time the Agreement and Guaranty were being negotiated, Merchant and Debtor did not in fact intend to perform their obligations under the Agreement and Guaranty. Specifically, Merchant did not actually intend to sell its future Receivables to Kapitus, nor to allow Kapitus to draw the purchased Receivables from the agreed account, and Debtor did not actually intend to ensure that Merchant performed its obligations, nor to guaranty performance in the event of default.

31.     Upon information and belief, immediately prior to the pre-funding call and prior to entry of the Agreement, a Dallas County judge had ordered Merchant to shut down its operations due to environmental concerns.   Upon information and belief, at the time of the pre-funding call and the entry into the Agreement, Merchant and Debtor knew Merchant was required to shut down or would likely be required to shut down within the next 12 months.   Accordingly, Debtor misrepresented that Merchant was in compliance with all laws, *see* Agreement, § 2.2, and that Merchant has all requisite authority to perform the obligations under the Agreement, *see* Agreement, § 2.3.

32.     Additionally, on July 11, 2019, another company named BRAC Diversified Holdings opened which listed Orrell as its managing member.   On information and belief, BRAC Diversified Holdings is the successor to the Merchant.  Upon information and belief, Debtor

intended to change the name of Merchant when it entered into the Agreement therefore misrepresenting that it would not change Merchant's name, see Agreement, § 2.6.

33.     Upon information and belief, the Merchant and Debtor entered into financing arrangements with other merchant cash advance providers including Kabbage and Marlin Capital Solutions.  *See* Schedules [Doc No. 1].  Upon information and belief, Merchant and Debtor entered into financing arrangements with these other merchant cash advance providers either prior to the Agreement or soon after entering into the Agreement.    If the third-party financing arrangements were in place prior to the Kapitus financing, then Debtor misrepresented the existence of the third-party financing arrangements during the pre-funding call and also misrepresented that the Merchant was selling Kapitus unencumbered Receivables, *see* Agreement, § 2.11.   Alternatively, if the Debtor caused the Merchant to enter into the third-party financing arrangements after the Kapitus financing, then the Debtor mispresented that the Merchant would not seek alternative financing without Kapitus's written permission, *see* Agreement, § 2.10 and the Debtor caused the Merchant to convert the Receivables it sold to Kapitus by selling them to another party.   Also, because the Debtor caused the Merchant to stack multiple financings either before or after the Kapitus financing, then the Debtor either misrepresented the Merchant's finances contrary to section 2.9 of the Agreement or if there were sufficient funds in the Merchant's business then the Debtor may have used the Kapitus funding for a non-business purpose in violation of section 2.12 of the Agreement.

34.     Upon information and belief, Merchant's and Debtor's misrepresentation as to their intent was done knowingly, with the intent to deceive Kapitus, and to thereby induce Kapitus to enter into the Agreement and Guaranty and advance money to them.

35.     Because Kapitus relied upon Merchant's and Debtor's knowing and intentional misrepresentations, Kapitus Servicing purchased the future receivables of Merchant and was not repaid in accordance with the Agreement.

36.     On October 31, 2019, Debtor filed for bankruptcy.

37.     On the pre-funding call, the Debtor represented that he did not expect to close his business for any reason over the next twelve months.  Upon information and belief, Merchant knew or should have known Merchant would be closing its business in the next twelve months because of its legal proceeding involving the City of Dallas.  In fact, according to Google Business Search, as of the date of this filing, the Merchant's business is reported as permanently closed, less than twelve months after the pre-funding call.

38.     In Section 2.1 of the Agreement, Debtor represented on behalf of Merchant that there have been no material changes to the Merchant's business.     Pursuant to the Application, Debtor reported that Merchant had annual gross revenue of $749,974.   However, notwithstanding the representation of no material changes in Merchant's business and the report of a relatively high annual gross revenue, Merchant failed to have sufficient funds in the Account to make the daily ACH transfers pursuant to the Agreement.    Upon information and belief, Merchant and Debtor knew at the time of the pre-funding call that there were material changes to the Merchant's financial condition from the information previously provided to Kapitus.   Kapitus relied on this misrepresentation in advancing funds to the Merchant.

39.     Upon information and belief, the acts and omissions that constitute default of the Agreement were performed or omitted by, at the direction of, or with the consent of the Debtor.

40.     In addition to signing the Agreement in his capacity as an owner and representative of Merchant, Debtor also signed the Agreement as a Guarantor, agreeing to be obligated to all

terms of the Agreement. *See* Agreement, pp. 8–9. Indeed, Debtor personally guaranteed that he would not take any action, nor permit Merchant to take any action, that would breach the Agreement.

41. Upon information and belief, Debtor never had any intention to honor the Agreement. Instead, upon information and belief, Debtor knew Merchant would be required to close within the next twelve months and the Debtor caused Merchant to enter into other merchant cash advances either prior to or following the entry into the Agreement, in breach of the Agreement.

## COUNT I
### Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

42. Plaintiff realleges paragraphs 1 through 41 and incorporates the same as though set forth herein.

43. Pursuant to section 523(a)(2)(A) of the Bankruptcy Code, a debt in which a debtor obtains money by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, is non-dischargeable.

44. Debtor engaged in false pretenses, false statements and actual fraud to obtain money from the Plaintiff including the following:

    a. Debtor represented to Kapitus that Merchant had no material changes in its business. Debtor had previously provided Kapitus financial information on the Application showing Merchant making gross annual revenue of $749,974. On information and belief, at the time of making the representations in the Agreement that there were no material changes in the Merchant's business, the Debtor knew

there were material changes from financial information provided in the Application.

b.   Debtor represented that it did not expect to close the Merchant's business for any reason in the next twelve months.  Also, the Debtor represented that the Merchant was in compliance with all applicable laws and that the Merchant had the authority to perform its obligations under the Agreement.  On information and belief and considering the legal actions pending against the Merchant at the time of making the representations, Debtor likely knew these statements were false when made.

c.   Debtor represented that Merchant was not a party to another merchant cash advance facility and Debtor also represented that Merchant would not enter into other merchant cash advance facility without the consent of Kapitus. Considering the other merchant cash advance facilities disclosed on the Debtor's personal schedules, upon information and belief, either the merchant cash advance facilities were in place prior to the Kapitus financing, in which case the Debtor misrepresented that the Merchant was not a party to any other such facilities and that the Receivables were unencumbered; or in the alternative, the Debtor caused the Merchant to enter into the merchant cash advance facilities after the Kapitus financing in which case the Debtor misrepresented that it would only enter into such other financings with the consent of Kapitus and it converted the Receivables it sold to Kapitus by selling them to another party.  Also, because the Debtor caused the Merchant to stack multiple financings either before or after the Kapitus financing, then the Debtor either misrepresented the Merchant's

finances contrary to section 2.9 of the Agreement or if there were sufficient funds in the Merchant's business then the Debtor may have used the Kapitus funding for a non-business purpose in violation of section 2.12 of the Agreement.

  d. The Debtor represented that Merchant would not change its business name.   On information and belief, the Debtor misrepresented that the Debtor would not change its business name by intending to form BRAC Diversified Holdings as the successor to the Merchant.

45. In reliance upon the foregoing representations made by the Debtor, Kapitus funded the Merchant $75,000.00.

46. The Debtor's debt to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is non-dischargeable.  Plaintiff is entitled to an award of damages in the amount of $96,626.16,[2] as of October 31, 2019, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## <u>COUNT II</u>
### Non-dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B)

47. Plaintiff repeats and realleges paragraphs 1 through 46 and incorporates the same as though set forth herein.

48. Pursuant section 523(a)(2)(B) of the Bankruptcy Code, a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial

---

[2] This amount includes $90,580, the remaining unpaid amount of the purchase Receivables, plus $2,546.16, interest at the New York legal rate of nine percent from May 14, 2019 to October 31, 2019, plus $2,500, the contractual default fee, plus $1,000, the contractual ACH fee.

condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

49.     Debtor and Merchant, an insider of the Debtor, did obtain money from Plaintiff by the making materially false statements in the Agreement and other writings respecting Debtor's and Merchant's financial condition on which Plaintiff reasonably relied, among others:

a.    Debtor and Merchant made the following representations and warranties to Plaintiff in the Agreement:

**II.      REPRESENTATIONS,    WARRANTIES    AND COVENANTS.**  Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.1 Financial Condition and Financial Information.** .  .  . Merchant's bank statements and financial information, provided to [Kapitus] fairly represent the financial condition of Merchant of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. . . .  No material changes, financial or otherwise, in the condition, operation or ownership of Merchant are in any way expected or anticipated. Merchant has a continuing, affirmative obligation to advise [Kapitus] of any material change in its financial condition, operation or ownership. . . .

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the [Kapitus] or change any of its places of business without ten (10) days prior written notice to [Kapitus].

**2.7 Daily Batch Out.**  Merchant will batch out receipts with the Processor on a daily basis. . ..

**2.9 No Bankruptcy or Insolvency.**  As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Merchant.  Merchant further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Additional Financing.  Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than [Kapitus] without [Kapitus]'s written permission.**

**2.11 Unencumbered Receipts.**  Merchant has good, complete and marketable title to all Receipts, free and clear of all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Kapitus].

**2.12 Business Purpose.**  Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

*See* Agreement, p. 3-4.

b.  Debtor misrepresented the financial condition of the Merchant including falsely stating there were no material changes in the Merchant's business from earlier information provided by Debtor to Kapitus.  The earlier information provided to Kapitus showed Merchant made $749,974 in annual gross revenue.  On information and belief, at the time it entered into the Agreement, the Debtor knew there were

material changes in Merchant's business and the Merchant was not making $749,974 in annual gross revenue.   Kapitus justifiably relied on these representations contained in the Agreement regarding the Merchant's financial condition and financial information to extend the financing and execute the Agreement.

c.   On information and belief, Debtor misrepresented that Merchant was not a party to any arrangement, agreement or commitment for financing.  The Debtor's schedules show that the Debtor was a party to financing arrangements with other merchant cash advance providers at the time the Debtor filed for bankruptcy.  On information and belief, Merchant was a party to other merchant cash advance arrangements when it obtained financing from Kapitus and the Debtor misrepresented the Merchant's financial condition to Kapitus.

50.     The Debtor's conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with the intent to deceive.

51.     Consequently, the Debtor's debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with intent to deceive, and is non-dischargeable.

52.     As a result of Debtor's statements and acts described above, Debtor is not entitled to a discharge pursuant to section 523(a)(2) of the Bankruptcy Code.  Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of $96,626.16 as of October 31, 2019, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## COUNT III

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)

53.    Plaintiff repeats and realleges the above allegations set forth in Paragraph 1 through 52 and incorporates the same herein as though more fully stated at length.

54.    Debtor's liability to Plaintiff as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of section 523(a)(4) of the Bankruptcy Code.

55.    Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent to take funds from Plaintiff without any intent to repay these funds.

56.    Debtor obtained the funds from the Agreement by committing fraud and defalcation while acting in a fiduciary capacity as the owner and representative of Merchant.

57.    Upon information and belief, Debtor misappropriated portions of the funds and/or Receivables for his own benefit by fraudulent intent or deceit.

58.    Upon information and belief, Debtor transferred the funds and/or Receivables into accounts not accessible by Plaintiff, which constitutes larceny.

59.    Upon information and belief, Debtor used the funds and/or Receivables without explanation, reason or purpose relating to Merchant's business.

60.    Alternatively, upon information and belief, Debtor's misappropriation of the funds and/or Receivables was embezzlement because Plaintiff entrusted Debtor with the funds and/or Receivables and because Debtor may have obtained control over such funds and/or Receivables without authorization.

61.    Upon information and belief, Debtor's debt to Plaintiff is a debt for larceny and/or embezzlement because the Debtor stole the Receivables to be deposited into the Account that

Plaintiff acquired under the Agreement with the intent to permanently deprive the Plaintiff of those Receivables.

62.     Plaintiff sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary, his embezzlement, and/or his larceny of the funds and/or Receivables.

63.     Debtor's obligation to Plaintiff is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.  Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of $96,626.16 as of October 31, 2019, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## COUNT IV
### Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)

64.     Plaintiff repeats and realleges paragraphs 1 through 63 and incorporates the same as though set forth herein.

65.     Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be non-dischargeable.

66.     Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent not to use the proceeds from the Agreement for business purposes and not to repay the amounts owed under the Agreement.

67.     Debtor defaulted on its payment obligations under the Agreement soon after entering into the Agreement.  Specifically, Merchant only turned over $10,670 of the $101,250 of Receivables purchased by Kapitus.  Upon information and belief, the Debtor never had any intention to honor the Agreement.

68.     Debtor also engaged in the following willful and malicious acts that caused injury to Kapitus, among others, upon information and belief:

    a.  Debtor willfully and maliciously executed the Agreement in which he represented Debtor's and Merchant's financial condition was accurately reflected in the documents produced to Plaintiff when they were not.

    b.  Debtor willfully and maliciously misrepresented that the Merchant was in compliance with all applicable laws and that Merchant had the authority to perform all its obligations under the Agreement when in fact the Merchant was a party to a legal proceeding in which a Dallas County Judge had already ordered Merchant to cease business operations.

    c.  Debtor willfully and maliciously made material omissions of fact that induced Plaintiff into transferring the funds to Merchant, such as failing to disclose that he did not intend to pay the Receivables to Plaintiff as represented in the Agreement and failing to disclose that he did not intend to honor the terms of the Agreement.

69.     The Debtor's activities described herein constitute willful and malicious conduct which resulted in injury to Plaintiff, and the debt owed under the terms of the Agreement. Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of $96,626.16 as of October 31, 2019, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against the Debtor, as follows:

    a.  for an award of damages in the amount of $96,626.16;

b.  for an order providing that the debt owed by Debtor to Plaintiff is non-dischargeable in the instant bankruptcy case, in any other chapter under title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

c.  for attorneys' fees, costs and interest accruing on and after October 31, 2019; and

d.  for such other and further relief as this Court may deem just and proper.

Dated February 10, 2020.

DIAMOND MCCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
Bar No. 24083768
crubio@diamondmccarthy.com
909 Fannin, Suite 3700
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

COUNSEL FOR PLAINTIFF
KAPITUS SERVICING, INC.